

P-SEND

DOCKETED ON CM

NOV 1 0 2005

BY ___ 082

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 0 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DJEHUTY MA'AT-RA, | Case No. CV 03-2508 R (AN) |
|     Plaintiff, | REPORT AND RECOMMENDATION OF |
|     v. | UNITED STATES MAGISTRATE JUDGE |
| BEN BATEMAN, et al., | |
|     Defendants. | |

## I. INTRODUCTION

This Report and Recommendation is submitted to the Honorable Manuel Real, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

This is a *pro se* civil rights action brought by plaintiff Djehuty Ma'at-Ra ("Ma'at-Ra"), who is also known as Earnest LaShun Cooper, Jr. and Jabir Abdul Akbar, against Glendale Police Officers Ben Bateman and Xzavia Atkins (collectively referred to as "Officers"), and Robert Morris, the owner of a private towing company. The case arises from Ma'at-Ra's traffic stop for driving without visible license plates and a current car registration, which led to his arrest and the search and seizure of him and his car when he also failed to produce a driver's license, car registration, and proof of insurance. He seeks money damages as well as declaratory and injunctive relief against the defendants.

1   Before the Court are the parties' respective cross-motions for summary judgment.

2   [Docket items 52, 59, 80 & 83.]  For the reasons reported below, it is recommended that the

3   Court should deny Ma'at-Ra's summary judgment motions (docket items 59 and 80), grant

4   defendants' motions for summary judgment (docket items 52 and 83), and enter a judgment

5   dismissing this action with prejudice.

6   ## II. DISCUSSION

7   **A.   Standard of Review**

8   Summary judgment will be granted if there is no genuine issue of material fact. Rule

9   56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997). "A material

10  issue of fact is one that affects the outcome of the litigation and requires a trial to resolve

11  the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306

12  (9th Cir. 1982). The moving party bears the initial burden of establishing the absence of a

13  genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106

14  S.Ct. 2548 (1986). "That burden may be met by "'showing' -- that is, pointing out to the

15  district court -- that there is an absence of evidence to support the nonmoving party's case."

16  *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e)

17  requires the nonmoving party to go beyond the pleadings and identify specific facts that

18  show a genuine issue for trial.  *See id.* at 323-34, 106 S.Ct. 2548; *Anderson v. Liberty*

19  *Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Only genuine disputes -- where the

20  evidence is such that a reasonable jury could return a verdict for the nonmoving party --

21  over facts that might affect the outcome of the suit under the governing law will properly

22  preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505;

23  *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the

24  nonmoving party must offer specific evidence from which a reasonable jury could return a

25  verdict in its favor). Broad, conclusory allegations are insufficient to withstand a summary

26  judgment challenge. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir.

27  2003); *see also Olsen v. Idaho State Bd. of Med.*, No. 02-35796, 363 F.3d 916, 928-29 (9th

28  Cir. 2004) (upholding summary judgment where § 1983 plaintiff failed to establish the

1   existence of an underlying constitutional violation).  Nor may the Court assume the truth

2   of the challenged allegations in the complaint.  *Butler v. San Diego Dist. Attorney's Office*,

3   370 F.3d 956, 963 (9th Cir. 2004).

4   **B.    The Relevant Facts**

5          The pleadings and evidence proffered by the parties in connection with their cross-

6   motions establish the following material facts are undisputed or, to the extent they are

7   challenged, are viewed in the light most favorable to Ma'at-Ra.

8          On Friday, October 4, 2002, at 5:40 p.m., Glendale Police Officer Bateman[1] was

9   driving northbound on Glendale Avenue in a marked police car when he saw a 1991 Honda

10  Civic automobile traveling in front of him without a visible license plate or current vehicle

11  registration in violation of California Vehicle Code ("CVC") §§4000 and 5200.

12  [Declaration of Ben Bateman ("Bateman Decl."), ¶¶1-2 (attached to docket item 84);

13  8/11/04 Declaration of Djehuty Ma'at-Ra in support of motion for summary judgment

14  against Morris (docket item 61) ("8/11 Ma'at-Ra Decl."), ¶2.[2]]  Accordingly, Officer

15  _____

16         [1]    Both officers declare that Officer Atkins was not present when Officer Bateman

17  stopped Ma'at-Ra; Officer Atkins also declares that he was a Glendale Police Officer and
    the Custody Officer in charge of the Glendale City Jail's Custody Bureau when Ma'at-Ra

18  was arrested on October 4, 2002, that he did not report for duty at the Jail until 7:00 p.m.,

19  and that his contact with Ma-at Ra was limited to issuing the Notice to Appear and releasing
    Ma'at-Ra from custody. [Bateman Decl., ¶5; 9/2/04 Declaration of Xzavia Atkins (attached

20  to docket item 84)("Atkins Decl."), ¶¶1-7 .] Officer Atkins also explains that, in issuing the

21  Notice to Appear citation, he mistakenly identified himself as the arresting officer and
    Officer Bateman as the citing officer.  [*Id.*, ¶7.]  In contrast, Ma'at-Ra declares Officer

22  Atkins was present when he was arrested by Officer Bateman, and that Officer Atkins

23  videotaped his car before it was impounded and towed. [8/31 Ma'at-Ra Decl., ¶¶13-14, 17.]
    This discrepancy does not raise a triable issue of material fact because, as discussed more

24  fully below, the defendants are still entitled to summary judgment in their favor even if it

25  is assumed that Officer Atkins accompanied Officer Bateman.

26         [2]    At the outset, the Magistrate Judge notes that Ma'at-Ra has filed a total of three

27  separate declarations in connection with the four cross-motions for summary judgment: (1)
    the 8/11 Ma'at-Ra Decl.; (2) a declaration filed on August 31, 2004, supporting his motion

28                                                                                  (continued...)

1   Bateman pulled up along the passenger side of the car and he asked Ma'at-Ra, "How long
2   have you had your car?" [Complaint, ¶8; 9/9 Ma'at-Ra Decl., ¶13.]  Instead of answering
3   the question, Ma'at-Ra responded by asking Officer Bateman, "Is this question mandatory
4   or voluntary?" thereby prompting Officer Bateman to reply "Mandatory!" [Complaint, ¶8.]
5    Ma'at-Ra then asked Officer Bateman, "If I answer you, will you use my answer against
6   me a future criminal proceeding?" at which point Officer Bateman directed Ma'at-Ra to pull
7   over. [*Id.*] After stopping, Officer Bateman asked Ma'at-Ra for his driver's license, current
8   car registration, and proof of insurance. [Bateman Decl., ¶3; 8/11 Ma'at-Ra Decl., ¶3.]
9   Ma'at-Ra did not comply.  [*Id.*, ¶4; 8/11 Ma'at-Ra Decl., ¶7.]  Instead, Ma'at-Ra told
10  Officer Bateman that he had "lawfully rescinded" these documents and, instead, he
11  produced a self-made identification card. [8/11 Ma'at-Ra Decl., ¶3; Ma'at-Ra's
12  Memorandum of Law in Support of Motion for Summary Judgment (docket item 80) ("MSJ
13  Memo.") at 3:21-22, Ex. A.][2/]  At the time of the traffic stop, Ma'at-Ra's car registration had

14

15      [2/]   (...continued)
16  for summary judgment against Bateman and Atkins (docket item 82) ("8/31Ma'at-Ra
17  Decl."), and (3) a declaration filed on September 9, 2004, supporting his opposition to the
    Bateman-Atkins' motion for summary judgment (docket item 91) ("9/9 Ma'at-Ra Decl.").
18  These declarations will be cited in the text by their aforementioned abbreviations.  On
19  August 23, 2004, Ma'at-Ra filed an opposition to Morris' motion for summary judgment
    but it was not accompanied by a supporting declaration.
20

21      [3/]   Ma'at-Ra declares that, "[o]n November 1, 2001, I lawfully rescinded my
    California driver's license, vehicle registration, and vehicle insurance and returned them to
22  their owner -- State of California Department of Motor Vehicles [("DMV")], located in
23  Sacramento, California, due to fraud, duress, menace, error, and undue influence and
    reclaimed my right to travel using private property in the form of a house/consumer good
24  or commodity." [8/11 Ma-at Ra Decl., ¶3; 9/9 Ma'at-Ra Decl., ¶¶4, 9; *see also*, Ma'at-Ra
25  MSJ Memo., Ex. B (11/1/01 "Declaration of Non-Juristic Status" to DMV director wherein
    he declares that he is "no longer a juristic person" or "a 14th Amendment citizen of the
26  corporate United States and therefore not property of the corporate entities known as 'the
27  United States' (Washington, D.C.) and the 'State of California[.]' Concurred with by the
    President, Legislature and judiciary of the United States I am solely an *American Citizen*
28                                                          (continued...)

1   been expired for over six months. [Ma'at-Ra's MSJ Memo., Ex. B (car registration).]

2   Based upon Ma'at-Ra's failure to produce a driver's license, car registration and proof of

3   insurance,[4] Officer Bateman arrested Ma'at-Ra, impounded his car and searched the trunk;

4   Ma'at-Ra also asserts that Officer Bateman confiscated some personal property that was in

5   his car that was later returned to him. [Bateman Decl., ¶4; 8/31 Ma'at-Ra Decl., ¶¶16, 22,

6   Ma'at-Ra's MSJ Memo., Ex. C.] Officer Bateman then contacted Monterey Tow Service

7   ("Monterey"), the d/b/a for J&E Service, Inc. ("J&E"), a private towing company owned by

8   defendant Morris that has a towing contract with the City of Glendale. [8/6/04 Declaration

9   of Robert Morris (docket item 55) ("Morris Decl."), ¶¶1-4, 12.] In response to Officer

10  Bateman's request, J&E dispatched Raphael Mundo, a Monterey tow truck operator, to the

11  scene and Mundo towed Ma'at-Ra's car to J&E's storage lot. [*Id.*, ¶4.] Morris was not

12  personally involved in the towing of Ma'at-Ra's car. [*Id.*]

13      Ma'at-Ra requested to be brought before a magistrate, however, he was told no

14  magistrate was available at that time of the day and was transported to the Glendale City Jail

15  where he was booked. [8/11 Ma'at-Ra Decl., ¶¶9-10; Complaint, ¶12.] After Ma'at-Ra was

16  booked, Officer Atkins issued a Notice to Appear citation to Ma'at-Ra that cited him for

17  violations of CVC §§5200, 16028(a), 12951(a) and 4000(a). [8/11 Ma'at-Ra Decl., ¶10;

18  Atkins Decl., ¶7.] Officer Atkins released Ma'at-Ra from custody after Ma'at-Ra signed

19  the notice to appear. [*Id.*; Ma'at-Ra's MSJ Memo., 4:22-25, Ex. F; 8/31Ma'at-Ra Decl.,

20  ¶18.] According to Ma'at-Ra, his stop and arrest on the street lasted about one hour, and

21  he was detained at the jail for another four hours before he was released on his own

22

23      [3] (...continued)

24  and, therefore, claim my sovereignty."

25      [4] Ma'at-Ra alleges that, after Officer Bateman demanded Ma'at-Ra to produce his
    driver's license, proof of registration, and proof of insurance, Ma'at-Ra asked Officer
26  Bateman if he was being arrested and, if so, whether he saw Ma'at-Ra commit a public
27  offense, or alternatively, had a warrant for his arrest or probable cause. [Complaint, ¶9.]
    Ma'at-Ra alleges that Officer Bateman told him he was being detained, not arrested, and
28  that he did not need probable cause to detain Ma'at-Ra. [*Id.*]

1 recognizance. [Ma'at-Ra's MSJ Memo., 4:22-25; 8/31 Ma'at-Ra Decl., ¶18.] The traffic
2 citation was eventually dismissed for want of prosecution. [*Id.*, ¶21.]

3       Ma'at-Ra subsequently demanded that J&E return his car without paying the towing
4 and storage fees to J&E. [Morris Decl. ¶5.] Accordingly, J&E brought a small claims
5 action against Ma'at-Ra and recovered a judgment against Ma'at-Ra for the unpaid fees and
6 costs of suit in the amount of $1,116.00. [*Id.*, ¶¶6-7.] Ma'at-Ra appealed the judgment to
7 the Los Angeles Superior Court, which affirmed the judgment, granted J&E's request for
8 additur, and awarded J&E damages of $3,846.00 and costs of $30.00 against Ma'at-Ra. [*Id.*,
9 ¶¶8-9.] J&E then received permission from the DMV to dispose of Ma'at-Ra's car at a lien
10 sale and sold the car for $800.00. [*Id.*, ¶¶10-11.]

11 **C.      Ma'at-Ra's Prior State Case**

12       As a prefatory matter, the Court addresses the defendants' contentions that Ma'at-
13 Ra's pending §1983 claims are barred by either *res judicata* or the *Rooker-Feldman*
14 *doctrine*[5] because Ma'at-Ra previously brought a similar civil action in state court based
15 upon the same facts and circumstances that was ultimately adjudicated against him. The
16 Court is compelled to address this question at the outset since a district court lacks subject
17 matter jurisdiction over purported §1983 claims that basically seek to review and reverse
18 a final state judgment. *Branson v. Nott*, 62 F3d 287, 291-292 (9th Cir. 1995).

19       Three months before he filed his pending complaint with this Court on April 9, 2003,
20 Ma'at-Ra filed a complaint against the Glendale Police Department in the Los Angeles
21 Superior Court entitled *Djehuty Ma'at-Ra v. Glendale Police Department*, case no.
22 EC035964 ("State Case"); on April 24, 2003, he filed an amended complaint in the State
23 Case. [Declaration of Bradley P. Childers in support of Morris' motion for summary
24

---

25     [5]  A federal district court does not have authority to review a state court decision;
26 review of state court decisions may only be conducted in the United States Supreme Court
on direct appeal from the highest state court. *District of Columbia Court of Appeals v.*
27 *Feldman*, 460 U.S. 462, 476, 482, 486, 75 L.Ed.2d 206, 218, 222, 225 (1983); *Rooker v.*
*Fidelity Trust Co.*, 263 U.S. 413, 416, 68 L.Ed. 362 (1923); *Partington v. Gedan*, 961 F.2d
28 852, 864 (9th Cir.), *cert. denied*, 506 U.S. 999, 121 L.Ed.2d 537 (1992).

1  judgment (docket item 56) ("Childers Decl."), ¶¶2-3, Morris' lodged Separate Statement

2  (docket item 56), Exs. 9 & 10 thereto.]  Liberally construed, a comparison of the original

3  and amended complaints in the State Case indicates that Ma'at-Ra basically filed the

4  amended complaint to solely assert *state* claims for false arrest and imprisonment claims

5  against the Glendale Police Department, which are still based upon the same acts and

6  circumstances that form the basis of the §1983 claims he is asserting against Bateman,

7  Atkins, and Morris in this pending action. [*Id.*, Ex. 10 at 000050.]  The City of Glendale

8  ("City") appeared on behalf of its police department and, less than three months after Ma'at-

9  Ra commenced the State Case, the Los Angeles Superior Court granted the City's demurrer

10  to the amended complaint without leave to amend.  [Childers Decl., ¶4, Morris' Separate

11  Statement, Ex. 4 thereto.]

12        Giving Ma'at-Ra every benefit of the doubt, the Court finds the claims in Ma'at-Ra's

13  pending complaint are not barred by *res judicata* because his pending complaint only asserts

14  §1983 claims, not state claims.  Further, since Ma'at-Ra's pending complaint does not raise

15  any state claims that the state court adjudicated against him in the State Case, he is not

16  attempting to obtain a federal appeal of the dismissal of those state claims in this Court.

17  Therefore, his §1983 claims are not barred by the *Rooker-Feldman* doctrine.  Accordingly,

18  the Court finds it has jurisdiction to review the merits of Ma'at-Ra's §1983 claims.

19  **D.    §1983 Claims against the Officers**

20        To state a §1983 claim against a defendant, a plaintiff must allege and prove the

21  defendant, acting under color of state law, deprived him or her of a right secured by the

22  Constitution or federal laws.  *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988);

23  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  "[Section] 1983 'is not itself a

24  source of substantive rights,' but merely provides 'a method for vindicating federal rights

25  elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

26        Ma'at-Ra's complaint does not set forth discrete causes of action that identify the

27  specific Constitutional right or federal laws that each defendant violated by engaging in

28  certain alleged acts or omissions.  Instead, the complaint has a section with the factual

1  allegations that is followed by another section entitled "Federal Cause of Action" consisting
2  of a single paragraph -- paragraph 15 -- in which Ma'at-Ra collectively alleges in a
3  conclusory fashion that, by engaging in "herein above described actions and omissions," the
4  defendants deprived him of various rights. [Complaint, ¶15.]  The Court finds that, even
5  under a liberally construction, Ma'at-Ra's §1983 claims fail to raise a triable issue of fact.

6       **1.    Fourth and Fourteenth Amendment Claims**

7       Ma'at-Ra's complaint and his pending motion for summary judgment establish that
8  he is principally claiming that Officers Bateman and Atkins violated his rights under the
9  Fourth and Fourteenth Amendments by: (1) arresting him, and searching and seizing him
10 and his car, without probable cause; and (2) failing to take him before a magistrate for a
11 probable cause hearing and detaining him for approximately four hours before releasing
12 him. [Complaint, ¶¶11-15; Ma'at-Ra's Motion for Summary Judgment ("MSJ") at 10-18.]
13 However, the Court finds Ma'at-Ra's Fourth and Fourteenth Amendment §1983 claims are
14 frivolous and fail to raise a triable issue of fact because every aspect of the defendants'
15 challenged conduct was lawful.

16          **a.    Investigatory Traffic Stop**

17      As a threshold matter, the Fourth Amendment only requires a police officer to have
18 a reasonable suspicion in order to stop and question a motorist for an apparent traffic
19 violation. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769 (1996); *Haynie*
20 *v. County of Los Angeles*, 338 F.3d 1071, 1075 (9th Cir. 2003) ("'The Fourth Amendment
21 requires only reasonable suspicion in the context of investigative traffic stops.'"). By
22 driving his car on a public road without visible license plates and a current registration
23 sticker, Ma'at-Ra gave Officers Bateman and Atkins[6] more than a reasonable suspicion to
24 stop and question him for violating CVC §§ 4000 (a)(1) (in relevant part, "No person shall
25 drive, move, or leave standing upon a highway, ...any motor vehicle...unless it is registered
26 and the appropriate fees have been paid under this code") and 5200 (requiring license plates

27

28          [6]      *See supra* note 1.

1  to be attached to front and back of car). *Haynie, id.* As part of the investigatory stop,

2  Officer Bateman lawfully asked Ma'at-Ra to produce his driver's license, current car

3  registration, and proof of insurance, which Ma-a't-Ra and every other motorist using public

4  roads in California are required by state law to produce for inspection upon the demand of

5  a peace officer. CVC §§ 12951(a) & (b) (requiring driver of a motor vehicle to have a valid

6  driver's license "in his or her immediate possession at all times when driving a motor

7  vehicle upon a highway," and to "present his or her license for examination upon demand

8  of a peace officer enforcing the provisions of this code") and 16028 (requiring motorist to

9  provide proof of insurance upon demand of a peace officer). Ma'at Ra did not produce any

10  of these required items.

11              **b.    Ma'at-Ra's Arrest**

12          A warrantless arrest is constitutionally valid if, at the moment of arrest, the officer

13  had probable cause to make the arrest. *United States v, Martin*, 509 F.2d 1211, 1213 (9th

14  Cir.), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958 (1975). By failing to produce a driver's

15  license, Ma'at-Ra gave Officer Bateman probable cause to arrest him for violating CVC §

16  12951(a) and the other CVC violations. CVC §40302(a): *see Atwater v. City of Lago Vista*,

17  532 U.S. 318, 354-55, 121 S.Ct. 1536, 1557-58 (2001) (warrantless arrest and related search

18  and seizure of motorist and her property based upon probable cause does not violate Fourth

19  Amendment even if the relevant criminal offense is a minor crime such as a misdeameanor

20  seatbelt violation). The existence of probable cause for Ma'at-Ra's arrest negates his §1983

21  claims for false arrest and imprisonment, and the legality of the investigatory stop and arrest

22  are unaffected by the subsequent dismissal of the traffic citation. *Pierson v. Ray*, 386 U.S.

23  547, 555, 87 S.Ct. 1213 (1967); *Benson v. Hightower*, 633 F.2d 869, 871 (9th Cir. 1980).

24              **c.    Search of Ma'at-Ra**

25          In his complaint, Ma'at-Ra does not expressly allege that his person was searched;

26  he only alleges that his vehicle was searched in connection with his arrest. [Complaint,

27  ¶11.] He makes the same representation in his declaration. [8/31 Ma'at-Ra Decl., ¶¶14-15.]

28  However, in his MSJ Memo., Ma'at-Ra vaguely contends that "Officer Bateman performed

1   a search of his person," and then he proceeds to argue "[d]efendants['] warrantless search

2   of Plaintiff and his property without probable cause violated [the Fourth Amendment.]

3   [Ma'at-Ra's MSJ Memo., 3:27, 12:20-22.]

4       Regardless, Ma'at-Ra's assertion that Officer Bateman unlawfully searched him is

5   frivolous and fails to raise a triable factual issue. As already discussed, the record

6   establishes that Officer Bateman had probable cause to arrest Ma'at-Ra. Consequently,

7   Officer Bateman's contemporaneous search of Ma'at-Ra was reasonable and lawful under

8   the Fourth Amendment because the search was incidental to a lawful arrest. *See United*

9   *States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (search-incident-to-arrest exception

10   permits law officers to conduct a warrantless search of arrestee and surrounding area, when

11   the search is incident to the valid arrest;"[s]uch searches have long been considered valid,

12   despite the absence of a warrant, because of the need to remove any weapons that threaten

13   the arresting officers or bystanders and the need to prevent concealment or destruction of

14   evidence."); *Haynie*, 339 F.3d at 1076 ("An officer may conduct a 'carefully limited search

15   for weapons' to dispel a reasonable fear for his safety.'").

16          **d.    Search and Seizure of Ma'at-Ra's Car**

17       The search of his car's compartment was reasonable because it was incidental to his

18   lawful arrest. *Smith*, 389 F.3d at 950; *United States v. Ibarra*, 345 F.3d 711, 715 (9th Cir.

19   2003). It is also well-settled that law enforcement officers may conduct an inventory search

20   of a lawfully impounded vehicle without a warrant, and that the search does not violate the

21   Fourth Amendment if it is conducted pursuant to some standardized criteria or established

22   routine. *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635 (1990); *South Dakota v.*

23   *Opperman*, 428 U.S. 364, 369 (1976); *United States v. Wanless*, 882 F.2d 1459, 1463 (9th

24   Cir.1989) (stating "it is undisputed that once a vehicle has been impounded, the police may

25   conduct an inventory search"). CVC §22651(o) is a sufficient, standardized criteria or

26   established routine under California law. *See People v. Benites*, 9 Cal.App.4th 309, 327,

27   11 Cal.Rptr.2d 512 (1992) (practice of allowing deputy's discretion to be guided by CVC

28   § 22651(p) in determining whether vehicle was to be impounded and searched sufficiently

1   limited officer's discretion for inventory search purposes). "The reasons for conducting the
2   inventory search are threefold: (1) the protection of the vehicle's owner's property; (2) the
3   protection of the police against claims by the owner; and (3) the protection of the police
4   from potential danger." *Wanless*, 882 F.2d at 1463 (*citing Opperman*, 428 U.S. at 369); *see*
5   *also, Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738 (1987) (holding officer's search
6   of closed backpack in the car, initiated after arrest, but before the tow truck arrived, was a
7   proper inventory search). Accordingly, the inventory search of the trunk was reasonable
8   and did not violate Ma'at-Ra's Constitutional rights.

9       Officer Bateman also lawfully impounded and towed Ma'at-Ra's vehicle because he
10  had probable cause to arrest Ma'at-Ra for the aforementioned CVC violations. CVC
11  §22651(h)(1). Additionally, the seizure of Ma'at-Ra's vehicle without a pre-towing notice
12  was lawful pursuant to CVC §22651(o) because, at the time the car was impounded and
13  towed on October 4, 2002, the car registration had been expired since March 16, 2002 --
14  well over six months. [Ma'at-Ra's MSJ Memo., 3:21-22, Ex. B (car registration).] CVC
15  §22651(o); *see Scofield v. Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988) (holding pre-
16  1994 version of CVC §22651(o), which authorized towing of cars unregistered for more
17  than one year, was constitutional and authorized peace officer to tow such an unregistered
18  car without pre-towing notice). Finally, Officer Bateman's decision to have Ma'at-Ra's car
19  towed is consistent with an independent "community caretaking function" and reasonable
20  to protect the car from vandalism or theft. *Hallstrom v. City of Garden Grove*, 991 F.2d
21  1473, 1477 n. 4 (9th Cir. 1992).

22          **e.    Request for Probable Cause Determination By Magistrate**

23      Ma'at-Ra claims his Fourth and Fourteenth Amendment rights were violated when
24  Officer Bateman took him to the Glendale City Jail for booking instead of taking him before
25  a magistrate for a prompt probable cause as required by CVC §40302(c).[2/] [Complaint,
26

27      [2/]  In relevant part, CVC §40302 provides: Whenever any person is arrested for any
28  violation of this code, not declared to be a felony, the arrested person shall be taken without
                                                                            (continued...)

1  ¶¶12, 15; Ma'at-Ra's MSJ Memo., 4:12-16; 15:4-16:8.]   This claim is frivolous and fails

2  to raise a triable issue of fact for two reasons.

3       First, Ma'at-Ra's reliance on CVC §40302(c) is misplaced. California law also

4  provides that, when a magistrate is unavailable, the arresting officer must take the arrestee

5  "without unnecessary delay, before: ...(b) [t]he officer in charge of the most accessible

6  county or city jail...who shall admit [the arrestee] to bail in accordance with a schedule fixed

7  as provided in Section 1269b of the Penal Code *or may, in lieu of bail, release the person*

8  *on his written promise to appear*...."  CVC §40307(b).  As discussed above, Ma'at-Ra has

9  declared under oath that, "[w]hile in police custody I demanded to be taken before a

10  magistrate for a prompt probable cause hearing, which was denied by the defendants who

11  said no magistrate was available at that time of the day,..." and instead "was taken directly

12  to [the] Glendale City Jail" where he was booked, cited, and then released after signing the

13  notice to appear issued to him by Officer Atkins, the Jail's acting Custody Officer at the

14  time of his arrest and detention.  [8/11 Ma'at-Ra Decl., ¶¶9.]   Ma'at-Ra has not proffered

15  any evidence that a magistrate was available and the record shows that the defendants

16  complied with CVC § 40307(b) by releasing him after he signed the notice to appear.[7]

17

_____

18       [7]  (...continued)

19  unnecessary delay before a magistrate within the county in which the offense charged is

20  alleged to have been committed and who has jurisdiction of the offense and is nearest or

20  most accessible with reference to the place where the arrest is made in any of the following

21  cases: (a) When the person arrested fails to present his driver's license or other satisfactory

     evidence of his identity for examination. (b) When the person arrested refuses to give his

22  written promise to appear in court. (c) When the person arrested demands an immediate

23  appearance before a magistrate.

24       [8]  CVC §40307(b) also states, "[w]henever a person is taken into custody pursuant

25  to [CVC § 40302(a)], the officer in charge of the ...city jail... may detain the person arrested

     for a reasonable period of time, not to exceed two hours, in order to verify his identity."

26  This does not raise a triable issue of fact because the record shows that the four hour period

27  that Ma'at-Ra was held at the jail included time to process and book him and, aside from

28  Ma'at-Ra's speculation and conjecture, he presents no evidence showing the defendants

                                                                            (continued...)

1    Second, §1983 only provides relief for violations of federal law, not state law.  For

2    purposes of §1983, "[a] Fourth Amendment analysis is used to determine the validity of a

3    warrantless arrestee's detention prior to a magistrate's determination of probable cause to

4    arrest warrantless arrest."  *Mackinney v. Nielsen*, 69 F.3d 1002, 1009 (9th Cir. 1995).  The

5    Fourth Amendment only requires an officer to obtain a judicial determination of probable

6    cause where the officer intends or expects to continue a warrantless arrestee's detention

7    beyond 48 hours.  *Gerstein v. Pugh*, 420 U.S. 103, 111-14, 95 S.Ct. 854 (1975) (Fourth

8    Amendment requires a warrantless arrestee to have a prompt hearing by a judicial officer

9    to determine whether there is probable cause to extend pretrial detention for charged

10   offenses); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661 (1991)

11   (probable cause determinations made within 48 hours of arrest are presumptively prompt

12   and arrestee bears the burden of showing detention was unreasonable); *Hallstrom v. City*

13   *of Garden Grove*, 991 F.2d 1473, 1479-80 (9th Cir. 1993) (within the first 48 hours after

14   arrest, the plaintiff bears the burden of establishing that any delay in taking him before a

15   magistrate was unreasonable).  It is undisputed that, from the time Ma'at-Ra was arrested

16   and released on his own recognizance, Ma'at-Ra was temporarily detained for five hours

17   at most. [8/31 Ma'at-Ra Decl. (docket item 82), ¶ 18.]  The record also shows that Ma'at-Ra

18   was detained pursuant to a lawful arrest and there is no evidence that shows his detention

19   was unreasonable due to ill will on the part of the defendants.  Further, because he was

20   admittedly released on his own recognizance well within 48 hours, there was no need for

21   a judicial determination of probable cause to continue his detention because he was not

22

23   _____

     [8/]    (...continued)
24   took over two hours to confirm his identification. [8/11 Ma'at-Ra Decl., ¶11.]  Ma'at-Ra
25   cannot rely on mere speculation or conjecture to avoid summary judgment. *Marport, Inc.*
     *v. Stabbert & Assocs., Inc.*, 771 F.2d 1216, 1218 n. 3 (9th Cir. 1985).  Further, Ma'at-Ra's
26   moving papers establish the identification he showed to the officers consisted of a self-
27   serving, homemade card that expressly disclaimed it is "not a government document" and
     does not reasonably constitute objectively reliable or "satisfactory evidence" of his identity
28   within the meaning of CVC §40302(a).

1    being detained.  Therefore, this aspect of Ma'at-Ra's Fourth and Fourteenth Amendment

2    claims against the defendants is frivolous and fails to raise a triable issue of material fact.

3          **2.      Sixth Amendment Claims**

4          Ma'at-Ra alleges the defendants' aforementioned conduct violated his "Sixth

5    Amendment right to know the nature and cause of the action against him" and "right to a

6    speedy trial." [Complaint, ¶15.]  However, the undisputed evidence, which includes his

7    own declarations and exhibits, establish that he was served with and signed a notice to

8    appear citation that gave him notice of the four traffic offenses he was charged with

9    committing.  [8/11 Ma'at-Ra Decl., ¶10; 8/31 Ma'at-Ra Decl., ¶18; Ma'at-Ra's MSJ Memo.,

10   4:22-25, Ex. F; Atkins Decl., ¶7.]  The undisputed evidence also shows there was never a

11   trial because the citation was dismissed, therefore, Ma'at-Ra did not sustain any damages

12   due to a purported lack of a speedy trial.  Accordingly, his Sixth Amendment claims are

13   frivolous and fail to raise a triable issue.

14         **3.      Eighth Amendment Claim**

15         Ma'at-Ra alleges the defendants' aforementioned conduct violated "[h]is Eighth

16   Amendment right to be free from cruel and unusual punishment." [Complaint, ¶15.]

17   However, it is undisputed that, at all relevant times, Ma'at-Ra was either an arrestee or

18   pre-trial detainee, therefore, his rights are controlled by the Fourth Amendment, not the

19   Eighth Amendment, which applies to convicted prisoners.  *Graham v. Connor*, 490 U.S.

20   386, 393-95 n. 10, 109 S.Ct. 1865, 1870-71 n. 10, 104 L.Ed.2d 443 (1989).  Accordingly,

21   Ma'at-Ra's Eighth Amendment claim is frivolous and fails to raise a triable issue of fact.

22   Further, as already discussed, the record establishes that none of Ma'at-Ra's Fourth

23   Amendment claims raise a triable issue of fact.

24         **4.      Thirteenth Amendment Claim**

25         Ma'at-Ra alleges the defendants' aforementioned actions violated "[h]is Thirteenth

26   Amendment right to be free from involuntary servitude." [Complaint, ¶15.]  Ma'at-Ra's

27   Thirteenth Amendment claim is frivolous, malicious, and fails to raise a triable issue of fact

28   because there is no evidence showing that any of the defendants subjected him to

1    involuntary servitude or "peonage -- a condition in which the victim is coerced by threat of

2    legal sanction to work off a debt to a master." *United States v. Kozminski*, 487 U.S. 931,

3    943, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988); *Awabdy v. City of Adelanto*, 368 F.3d 1062,

4    1070 (9th Cir. 2004).

5        **5.    Other Purported §1983 Claims**

6          Liberally construed, Ma'at-Ra also appears to claim that, by requiring him to have a

7    state issued driver's license, car registration, and insurance in order to use his car, the

8    defendants violated his right: to travel, personal liberty, own and use private property, and

9    not to have a charge or fee imposed for the exercise of a secured right. [Complaint, ¶15.]

10    These purported §1983 claims are frivolous and fail to raise a triable issue of fact precluding

11    summary judgment for the defendants.

12          There is no fundamental right to drive a motor vehicle. *See Miller v. Reed*, 176 F.3d

13    1202, 1205-06 (9th Cir. 1999).  Further, the substantial private interest a person may have

14    in a vehicle is outweighed by a state's legitimate interest in regulating the ownership and

15    use of the vehicle on public roads through "numerous rules and regulations governing the

16    use of one's vehicle, including a requirement that the vehicle be registered." *Schofield*, 862

17    F.2d at 762; *see also Reitz v. Mealey*, 314 U.S. 33, 36, 62 S.Ct. 24 (1941) ("The universal

18    practice is to register ownership of automobiles and to license their drivers. Any appropriate

19    means adopted by the states to insure competence and care on the part of its licensees and

20    to protect others using the highway is consonant with due process."), *overruled in part on*

21    *other grounds by Perez v. Campbell*, 402 U.S. 637, 652-54, 91 S.Ct. 1704 (1971); *Hallstrom*

22    *v. City of Garden Grove*, 991 F.2d 1473, 1477 (9th Cir. 1992) ("Operation of a motor

23    vehicle is a 'highly regulated activity, therefore[,] the driver accepts the regulatory burden

24    along with the benefits of using public roads.'"), *cert. denied sub nom, Killeen v. Hallstrom*,

25    510 U.S. 991, 114 S.Ct. 549 (1993).

26          In his complaint, Ma'at-Ra cites various cases and secondary authorities in support

27    of these other §1983 claims.  However, the United States Supreme Court cases he cites are

28

1 | inapposite or materially distinguishable[9/] and the cases from other jurisdictions and

2 | secondary authorities are equally inapposite and not even controlling.

3 | Accordingly, none of these other purported §1983 claims raise a triable issue of fact.

4 | **6. Qualified Immunity**

5 | In his summary judgment motion against the Officers, Ma'at-Ra also asserts the

6 | Officers are not entitled to qualified immunity. [Ma'at-Ra's Memorandum of Law in

7 | support of Motion For Summary Judgment against the City/Officers ("Memo re City") at

8 | 6:17-7:8.] Because the undisputed facts show that none of the defendants' alleged conduct

9 | violated any of Ma'at-Ra's constitutional rights, there is no need for a qualified immunity

10 | analysis. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1043 (9th Cir.2002), *cert. denied*, 538

11 | U.S. 1047, 123 S.Ct. 2110 (2003). Nevertheless, the Court notes that it was not

12 | unreasonable for either or both of the officers to conclude that their actions did not

13 | constitute a violation of Ma'at-Ra's rights. Thus, both officers would be entitled to

14 | qualified immunity even if Ma'at-Ra had properly alleged a constitutional violation, and

15 | qualified immunity is a proper, alternative basis for granting summary judgment in the

16 | defendants' favor. *Haynie*, 339 F.3d at 1078.

---

19 | [9/] For example, in support of his right to travel claim, Ma'at-Ra cites and principally relies upon *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322 (1969) and *Kent v. Dulles*, 357 U.S. 116, 78 S.Ct. 1113 (1958). [Complaint, ¶15.] However, *Shapiro* and *Kent* are inapposite because *Shapiro* only involves the right to interstate travel while *Kent* dealt with the right to foreign travel. *Shapiro*, 394 U.S. at 631; *Kent*, 357 U.S. at 117-27. Likewise, he cites *U.S. v. General Motors Co.*, 323 U.S. 373, 65 S.Ct. 357 (1945), in support of his claim that the defendants' conduct violated his constitutional right to own and use private property. [Complaint, ¶15.] However, *General Motors Co.* is inapposite because that case presented the question of the "ascertainment of the just compensation required by the Fifth Amendment of the Constitution, where, in the exercise of the power of eminent domain, temporary occupancy of a portion of a leased building is taken from a tenant who holds under a long term lease." *General Motors Co.*, 323 U.S. at 374. Ma'at-Ra has presented no evidence showing that any of the defendants seized his car or any other property pursuant to its power of eminent domain and the undisputed facts establish that the defendants lawfully seized his car incident to a lawful arrest.

**E.    §1983 Claims Against Morris**

Ma'at-Ra has introduced no evidence showing that Morris was personally involved in the search and seizure of his person or property, and that Ma'at-Ra is suing him solely based upon the fact that J&E is Morris' wholly owned towing corporation with a towing contract with the City of Glendale. The undisputed facts establish that a J&E employee towed Ma'at-Ra's vehicle pursuant to the directives of Officer Bateman. Generally, private parties are not acting under color of state law for purposes of §1983. *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). However, "a private towing company acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws, acts under color of state law for purposes of [§] 1983." *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982). Nevertheless, a private towing company that tows and impounds a vehicle at the request of an officer and thereafter complies with applicable state laws in storing and disposing of a towed vehicle is not liable under §1983 for any constitutional property deprivation. *Cf., id.* (towing company did not constitutionally deprive plaintiff vehicle owner of property by towing plaintiff's car at behest of police officer and refusing to return car without payment of towing and storage fees). The undisputed facts establish that Ma'at-Ra's car was seized and towed by J&E pursuant to a valid arrest made by Officer Bateman. Ma'at-Ra has not proffered any evidence that shows J&E failed to comply with applicable state laws in connection with storing and eventually disposing of the car. On the contrary, the undisputed facts establish that J&E obtained a judgment against Ma'at-Ra for his failure to pay J&E's statutorily authorized towing and storage fees, and was judicially authorized to sell the car due to Ma'at-Ra's failure to pay the storage and towing fees. Consequently, even assuming that Morris and J&E are one and the same or interchangeable for the purpose of Ma'at-Ra's purported §1983 claims, these purported claims against Morris are frivolous and fail to raise a triable issue.

/ / /

/ / /

1  **F.    Claims for Declaratory and Injunctive Relief**

2          In addition to seeking damages, Ma'at-Ra seeks declaratory and injunctive relief.

3          The declaratory relief he seeks is a judicial declaration that the defendants acted

4  "under color of law or totally outside the law and violated clearly established law and

5  human rights." [Complaint, Relief section, ¶E thereof, at 11:6-9.]   However, it is well-

6  settled that "[a] declaratory judgment, like other forms of equitable relief, should be granted

7  only as a matter of judicial discretion, exercised in the public interest[,]" *Eccles v. Peoples*

8  *Bank of Lakewood Village*, 333 U.S. 426, 431 (1948), and that "[d]eclaratory relief should

9  be denied when it will neither serve a useful purpose in clarifying and settling the legal

10 relations in issue nor terminate the proceedings and afford relief from the uncertainty and

11 controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1457 (9th

12 Cir. 1985) (en banc).   Given that Ma'at-Ra's claims are frivolous or lack merit for the

13 reasons stated above, the Court finds Ma'at-Ra is not entitled to declarartory relief.

14         The injunctive relief sought by Ma-at Ra consists of an injunction "to prevent the

15 unlawful selling of plaintiff's automobile by [Morris.]" [Id., ¶F at 11:10-20.]   However,

16 as already discussed, J&E received permission from the DMV to dispose of Ma'at-Ra's car

17 at a lien sale and sold the car for $800.00. [Morris Decl., ¶¶10-11.]   Therefore, Ma'at-Ra's

18 request for injunctive relief is moot and he cannot show the threat of irreparable injury.

19 Further, to the extent he claims that J&E sold his car improperly, he has an adequate remedy

20 at law.   Accordingly, Ma'at-Ra is not entitled to any injunctive relief.

21 **G.    Purported State Claims**

22         As discussed above, the Court finds the complaint does not raise any state claims.

23 Even if it did, a district court is not required to retain supplemental jurisdiction over state

24 claims after dismissing the federal claims that originally supported jurisdiction. 28 U.S.C.

25 § 1367(c)(3); *Schneider v. TRW, Inc.*, 938 F.2d 986, 993-4 (9th Cir. 1991).   Further, the

26 state claims that were raised in his amended complaint in the State Case would be barred

27 by the *Rooker-Feldman* doctrine for the reasons discussed above.   To the extent the

28 complaint purports to contain new state claims that were not raised in his amended

complaint and were dismissed in the State Case, the Court declines to exercise supplemental jurisdiction over any such claims that Ma'at-Ra may later claim to be lurking somewhere in his pending complaint.

## III. CONCLUSION

For the reasons stated above, the Court should enter an order: (1) granting the defendants' respective motions for summary judgment (docket items 52 and 83), (2) denying Ma'at-Ra's summary judgment motions (docket items 59 and 80); (3) terminating all other pending motions; and (4) enter a judgment dismissing this action with prejudice.

DATED:  November 9, 2005

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE